**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: 21-cv-1708-WJM-KMT

ESTATE OF CHAD ALEXANDER BURNETT,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality;
SERGEANT MICHAEL INAZU, in his individual capacity;
OFFICER JOSEPH DAIGLE, in his individual capacity;
OFFICER MATTHEW FLEMING, in his individual capacity; and
OFFICER CAROLINE BARTH, in her individual capacity,

    Defendants.

---

**RESPONSE TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND JURY DEMAND**

---

Defendants, City of Colorado Springs, ("City"), Sergeant Michael Inazu, Officer Joseph Daigle, Officer Matthew Fleming, and Officer Caroline Barth (individual officers, collectively "officers"), by and through the Office of the City Attorney, hereby respond to the Motion for Leave to file an Amended Complaint.

**I.    Introduction and Background**

After counsel for Defendants conferred with Plaintiff and filed their motion to dismiss, Plaintiff filed the non-consent to magistrate jurisdiction form. Filing of the form triggered re-assignment to this Court. After reassignment, this Court struck the motion to dismiss for

noncompliance with its practice standards. The undersigned, in compliance with the Court's practice standards, conferred and inquired whether Plaintiff's counsel expected to amend the complaint in order to cure deficiencies identified in the original motion to dismiss. In response, Plaintiff now seeks to amend the complaint to add two claims—one under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.* and another—a standalone *Monell* claim alleging a failure to train and supervise regarding mental health. However, each claim is subject to dismissal and, therefore, amendment is futile. As such, leave to amend should be denied.

## II.     Argument

Failure to cure deficiencies by amendment and futility of amendment are two bases to deny leave. *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Whether to grant leave to amend a complaint is within the discretion of the Court. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). "In other words, an amendment is futile if it would not survive a motion to dismiss." *OraLabs, Inc. v. Kind Grp. LLC*, No. 13-CV-00170-PAB-KLM, 2014 WL 1395954, at *2 (D. Colo. Apr. 10, 2014). "To withstand a motion to dismiss, a complaint, when taken as true and in the light most favorable to the plaintiff, 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chisholm v. Rock Gardens Rafting, Inc.*, No. 11-CV-02437-MSK-KMT, 2012 WL 1130130, at *1 (D. Colo. Apr. 4, 2012) (quoting in part *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A. The ADA claim

An ADA claim has not been plausibly alleged. First, officers were unaware of any specific disability affecting Mr. Burnett when they encountered him under tense circumstances after he had threatened neighbors with a knife. Second, the ADA does not require officers to diagnosis individuals they confront. Third, and finally, the ADA does not require a response from a crisis intervention team. For these reasons, the ADA claim is subject to dismissal.

In order to state a claim under the ADA, a plaintiff must prove:

(1) that he or she is a qualified individual with a disability;
(2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and
(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). "Based on the second element, courts have recognized two types of claims: (1) exclusion from or denial of benefits and (2) discrimination." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016). The Tenth Circuit, in *Gohier*, explained that Title II claims arising from arrests are premised on one of two theories. "The first is that police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity. The second is that, while police properly investigated and arrested a person with a disability for a crime unrelated to that disability, they failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* at 1220–21 (internal citations omitted).

Here, the amended complaint only alleges a failure to accommodate.[1] (ECF. 23-1, ¶ 71) Plaintiff alleges officers should have "called for backup from people with more experience in crisis intervention with respect to people exhibiting mental distress, such as members from the Crisis Intervention Team." (*Id.* at ¶ 36).

The Tenth Circuit has made clear, "[a] public entity must provide a reasonable accommodation under the ADA when it *knows* that the individual is disabled and requires an accommodation of some kind to participate in or receive the benefits of its services." *J.V.*, 813 F.3d at 1299 (internal quotation marks omitted) (emphasis added). The need for an accommodation must either be obvious or requested by the individual. *Id.* There is no allegation that Mr. Burnett requested an accommodation. The amended complaint fails to show that the officers were on notice of the need to accommodate Mr. Burnett.

Plaintiff alleges that Mr. Burnett was in the midst of a "mental health crisis" (*Id.* at ¶¶ 27-28) and Sergeant Inazu was aware that Mr. Burnett "had a history of mental illness." (*Id.* at ¶ 26) Plaintiff stops short of alleging that any officer had knowledge of Mr. Burnett's specific mental illness.[2] "Mental illness" covers a wide array of afflictions. Without knowledge of Mr. Burnett's specific disability, officers could not have provided an accommodation. *See Robertson v. Las Animas Cnty. Sheriff's Dep't,* 500 F.3d 1185, 1196 (10th Cir. 2007) ("Before a public entity can be required under the [ADA] to provide a disabled individual an auxiliary aid or service, a public

---

[1] The Tenth Circuit has yet to find that an ADA claim based on a failure to accommodate is a viable cause of action. *See J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015).

[2] The amended complaint alleges that Mr. Burnett was diagnosed with clinical depression as a teenager. His depression affects his "[mental] processing of current events, thinking, learning, concentrating, comprehending, interacting with others, sleeping, and effectively coping with anxiety and stress." (*Id.* at ¶ 9).

4

entity *must have knowledge* of the individual's disability and the individual's need for an accommodation." (emphasis added)). Further, the ADA does not require officers to diagnosis mental illness on the fly during a stressful, rapidly evolving encounter. Indeed, while Mr. Burnett was allegedly in the throes of an "obvious mental health crisis" (ECF. 23-1, ¶ 28), he could have just as well been inebriated (on any one of a number of different substances that mimic a mental illness), plain angry, or both.

Not only were officers unaware of a disability, but officers were also confronted with exigent circumstances when they were dispatched in response to two 911 calls which reported that Mr. Burnett had feloniously menaced a neighbor (*Id.* at ¶ 19) and was in possession of a knife (ECF 23-1, ¶ 20). Under the ADA, an accommodation is not required when an individual "poses a direct threat to the health or safety of others." 28 C.F.R. § 36.208(a). Nevertheless, the amended complaint alleges officers spoke with Mr. Burnett for an hour and a half before they attempted to apprehend him. (ECF. 23-1 ¶ 32) While the amended complaint alleges that Mr. Burnett threw the knife involved in the menacing incident into his front lawn (*Id.* at ¶ 31), a significant risk still existed that Mr. Burnett would continue to act unpredictably and violently towards police and others. This included the real possibility that he would retreat into his house to locate and use another knife or weapon.

Finally, it is unclear how a response from a Crisis Intervention Team or a response from officers with more experience in crisis intervention were reasonable accommodations. Either option would have left those officers guessing about the root cause of Mr. Burnett's actions without reducing the danger presented by Mr. Burnett. At some point, any officer, regardless of their

5

training, would be faced with the difficult decision of determining that Mr. Burnett was given sufficient time to voluntarily surrender and proceed to proactively apprehending him.

In total, the amended complaint falls short of alleging plausible facts that officers should have perceived a need for a special accommodation aside from the usual, lawful treatment afforded to any agitated, intoxicated or distressed person. As such, leave to file a claim based on a violation of the ADA should be denied.

### B. Failure to train and supervise regarding mental health

The standalone failure to train or supervise theory is subject to dismissal. The amended complaint does not contain any factual allegations surrounding CSPD's training and supervision and does not allege facts to support deliberate indifference.

"[T]he standards for pleading a municipal liability claim are strenuous, and those for asserting a viable failure to train claim particularly so." *Estate of Reat v. Rodriguez*, No. 12-CV-02531-REB-MEH, 2014 WL 4358333, at *2 (D. Colo. Sept. 3, 2014); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). "To state a *Monell* claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Cook v. Whyde*, No. 20-CV-02912-PAB-STV, 2021 WL 4459051, at *15 (D. Colo. Sept. 29, 2021) (internal quotation marks omitted). "'Deliberate indifference' for purposes of failure to train or supervise ordinarily necessitates a showing of a pattern of *similar* constitutional violations by untrained employees." *Id.* at *15 (emphasis added).

The amended complaint adds paragraphs describing four instances[3] between 2009 and 2019. (ECF 23-1, ¶¶ 107-110) None of the noted incidents involve police contacts with those suffering from mental illness. For purposes of a *Monell* claim based on a failure to train or supervise officers on contacts involving the mentally ill, reliance on these prior factually dissimilar incidents fail to plausibly establish deliberate indifference. *See Connick*, 563 U.S. at 62-63.

The amended complaint, as well, does not attempt to "set forth any facts concerning how the individual defendants were trained, who they were trained by, why their training was deficient, or what the City's training includes and how it has changed since the alleged pattern began . . . ." *Whyde*, 2021 WL 4456051 at *16; *see also Zartner v. City & Cty. of Denver*, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2017) (finding a failure to train theory insufficiently alleged when the amended complaint "ma[de] no reference to the [police department's] training protocols, inadequate or otherwise."). Instead, the amended complaint baldly alleges general deficiencies. (ECF 23-1, ¶¶ 112-114) Without a description of the specific deficiencies in training and supervision of the named officers, or any other officer, deliberate indifference to an obvious need for different or more training or supervision is missing. *See Bark v. Chacon*, No. 10-CV-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011). Accordingly, for these reasons, the claim based on a failure to train and supervise officers on their contacts with individuals suffering mental illness is deficient and subject to dismissal.

---

[3] The complaint does not allege that any of the incidents resulted in a finding of wrongdoing. *See Trujillo v. Campbell*, No. 09-CV-03011-CMA-KLM, 2012 WL 3609747, at *7 (D. Colo. Aug. 22, 2012) ("A plaintiff must also show that the municipality failed to investigate or take corrective action on any prior meritorious claim of excessive force."); *see also Harris v. City & Cty. of Denver*, No. 19-CV-00572-MEH, 2019 WL 6876870, at *12 (D. Colo. Dec. 17, 2019) (a failure to discipline requires a showing of "'repeated' complaints of unlawful entry and search.").

7

### C. Claims asserted in the original complaint

Claims asserted in the original complaint and asserted, again, in the amended complaint are subject to dismissal.

#### 1. Warrantless entry claim

The officers had probable cause to arrest Mr. Burnett for felony menacing and enter the residence in hot pursuit of him. Two 911 calls were made by neighbors—one reporting that Mr. Burnett had threatened the caller's husband and another to report that Mr. Burnett was seen in possession of a knife. (ECF 23-1, ¶¶ 19-20) After talking with neighbors, discovering the knife used in the felony menacing, and spending over an hour and a half attempting to convince him to surrender, officers chased Mr. Burnett into the house when he fled. (*Id.* at ¶¶ 25, 29, 31, 32, 40 and 41). Officers could lawfully pursue Mr. Burnett into his house when he fled from them. *See U.S. v. Santana*, 427 U.S. 38, 43 (1976).

#### 2. Excessive force claim

The excessive force claim is also subject to dismissal because the taser use, as described by the amended complaint, was reasonable. "Reasonableness is evaluated under a totality of the circumstances approach which requires that [the court] consider[s] the following factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir. 2008) (quoting in part *Graham v. Conner*, 490 U.S. 386, 396 (1989)). As described in greater detail in the motion to dismiss, Mr. Burnett fled and then resisted officers' attempts to apprehend him. (*Id.* at ¶¶ 41, 47) Only after Officer Barth used her taser were officers able to control Mr. Burnett well enough to place

handcuffs on him. (*Id.* at ¶¶ 51, 56, 59) Even after he was handcuffed, Mr. Burnett continued to put up a fight. (*Id.* at ¶¶ 62, 65) As officers attempted to carry him to a patrol car, Mr. Burnett pushed against officers and flung himself back into the house. (*Id.* at ¶¶ 61, 62, 64, 65) At all turns, Mr. Burnett resisted his arrest. Accordingly, the taser use identified in the amended complaint was reasonable.

Officer Barth's actions, also, did not violate clearly established law. Said differently, she did not have "fair and clear warning of what the Constitution requires." *Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011). Mr. Burnett was suspected of a serious felony at the time officers attempted to apprehend him. He posed a threat when he retreated into his residence and actively resisted arrest. As described in City Defendants' motion to dismiss, no precedent from the United States Supreme Court or the Tenth Circuit casts doubt on Officer Barth's conduct or put her on notice that she violated clearly established law. If anything, precedent suggests that her conduct was lawful.

### 3. Inadequate medical care claim

Plaintiff continues to assert a claim for inadequate medical attention in the amended complaint. "To prevail on the subjective component [of the two-pronged test], the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted); *see also Strain v. Regalado*, 977 F.3d 984, 992 (10th Cir. 2020) ("[D]eliberate indifference requires an official to subjectively disregard a known or obvious, serious medical need."). The amended complaint does not sufficiently allege the officers knew Mr. Burnett faced a substantial risk of harm and disregarded it.

The amended complaint does not allege that Mr. Burnett died of a particular action or medical condition. (ECF 23-1, ¶¶ 101, 102) Instead, it alleges that the officers should have been aware that anyone that engages in a physical encounter with another person has an increased risk of "sudden death."[4] (*Id.* at ¶ 101) The allegations fail to allege the requisite awareness of a specific underlying serious medical condition. *See Martinez v. Beggs*, 563 F.3d 1082, 1090 (10th Cir. 2009) (discussing the necessity of awareness the specific underlying serious medical condition and finding awareness of acute intoxication is not awareness of a heart attack and death). The amended complaint, too, alleges that officers repeatedly took steps to check Mr. Burnett's vital signs. (ECF 23-1, ¶¶ 79, 83, 86, 87, 89, 92). At most, alleged is an inadvertent failure to provide preferred medical care. This is insufficient to state a plausible claim for inadequate medical attention. *See Beggs*, 563 F.3d at 1088 ("'an inadvertent failure to provide adequate medical care' does not rise to a constitutional violation." (quoting in part *Estelle v. Gamble*, 429 U.S. 104, 105-06 (1976)). Accordingly, the claim is subject to dismissal.

### 4. *Monell* claim

In addition to the standalone *Monell* claim for a failure to train and supervise, the amended complaint alleges that the City has a "custom, policy and/or practice" of warrantless entry, improper use of tasers, declining to request medical services after an arrestee becomes unresponsive. (ECF 23-1, ¶ 106).

Like the original complaint, the amended complaint is rife with conclusions and formulaic recitations of the claim, and light on substantive allegations. The amended complaint adds four "examples" (*Id.* at ¶ 107) of the alleged customs. For starters, none of the "examples" identified in

---

[4] There is no allegation that Mr. Burnett died of positional asphyxiation.

paragraphs 107 through 110 of the amended complaint involve warrantless entry or declining to request medical services. So, with respect to the warrantless entry and medical services theories, Plaintiff solely and improperly relies on the incident with Mr. Burnett to support the *Monell* claim. *See Est. of Dixon v. Bd. of Cty. Commissioners of Crowley Cty.*, No. 15-CV-02727-NYW, 2017 WL 1407038, at *12 (D. Colo. Apr. 18, 2017) ("[A] plaintiff cannot rely only on her individual treatment to establish a policy or custom, even if she is treated on multiple days by different defendants. . . . a single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involved several employees of the municipality.").

Turning to the "examples" themselves, they involve three instances over ten years where officers allegedly used tasers in very different circumstances than those involving Mr. Burnett.[5] The instances are insufficient to establish a continuing, persistent and widespread custom. *See Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) ("In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." (internal quotation marks omitted)). Accordingly, the amended complaint does not cure the deficiencies of the original complaint and is subject to dismissal.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Honorable Court enter an order denying the motion for leave to amend.

---

[5] There is also one where two individuals were "held at taser and gunpoint[.]" (ECF 23-1, ¶ 109)

Respectfully submitted this 21st day of October, 2021.

>OFFICE OF THE CITY ATTORNEY
>Wynetta P. Massey, City Attorney
>
>
>*/s/ W. Erik Lamphere*
>W. Erik Lamphere, Division Chief - Litigation
>30 S. Nevada Ave., Suite 501
>Colorado Springs, Colorado 80903
>Telephone:  (719) 385-5909
>Facsimile:  (719) 385-5535
>erik.lamphere@coloradosprings.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 21st day of October, 2021, I electronically filed the foregoing **RESPONSE TO MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND JURY DEMAND** with the Clerk of the Court using the CM/ECF system which will send notification of such filing. I further certify that a true and correct copy of the same was mailed to the following party via U.S. Mail, postage pre-paid, addressed as follows:

Benjamin DeGolia (bd@rmlawyers.com)
Felipe Bohnet-Gomez (fbg@rmlawyers.com)
Siddhartha H. Rathod (sr@rmlawyers.com)
Matthew J. Cron (mc@rmlawyers.com)
*Attorneys for Plaintiff*

>*/s/ Terry JoHansen*
>Paralegal