# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No: 21-cv-1708-WJM-STV

ESTATE OF CHAD ALEXANDER BURNETT,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality;
SERGEANT MICHAEL INAZU, in his individual capacity;
OFFICER JOSEPH DAIGLE, in his individual capacity;
OFFICER MATTHEW FLEMING, in his individual capacity; and
OFFICER CAROLINE BARTH, in her individual capacity,

    Defendants.

---

## REPLY TO RESPONSE TO MOTION TO DISMISS OR, ALTERNATIVELY, PARTIAL EARLY MOTION FOR SUMMARY JUDGMENT

---

Defendants hereby reply to Plaintiff's response to the motion to dismiss or, alternatively, motion for early summary judgment.

## I. The Court Should Consider Body Worn Camera ("BWC") Footage

The Amended Complaint is blatantly contradicted by the BWC footage in several places. The Amended Complaint describes a police contact with an individual who is merely passively resisting. (ECF 29 at 2 (Mr. Burnett "offered only passive resistance"); ¶¶ 47, 54-56, 106) The BWC video captures Mr. Burnett resisting at every step, quite literally. And when Mr. Burnett stops actively fighting officers, the Amended Complaint alleges that officers continued to apply

pressure to Mr. Burnett and did nothing to monitor his health. (¶¶ 69-97)[1] Again, the BWC video blatantly contradicts this story. Plaintiff does not dispute the Statement of Material Facts and, in fact, relies upon it at times. (ECF No. 41, 4-7) The authenticity of the video is not challenged. Accordingly, the BWC video is properly considered when deciding the motion.

**II. The Officers Were in Hot Pursuit of a Fleeing Felon**

As alleged in the Amended Complaint, a neighbor called 911 after witnessing Mr. Burnett threaten the caller's husband with a knife. (¶ 19) Shortly after the first call, a second 911 caller reported seeing Mr. Burnett in the street holding the knife. (¶ 20) After officers arrived, they discover the same knife in Mr. Burnett's front yard. (¶ 31) Later, officers contacted Mr. Burnett outside of his house and decided to arrest him. (¶¶ 37-39) Mr. Burnett fled into the house to avoid capture. (¶ 41) When officers entered the house, they had probable cause to believe that Mr. Burnett had committed felony menacing and, as Mr. Burnett slammed the door on Sgt. Inazu (ECF No. 33-3, 1:29:13-14); (ECF No. 33-1, 46:10-46:12), they were in hot pursuit of a suspected felon. The officers could lawfully enter Mr. Burnett's residence.[2] *see U.S. v. Santana*, 427 U.S. 38, 43 (1976) ("[A] suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place.").

The Response relies on two case which involve significantly different circumstances. In *Attocknie v. Smith*, 798 F.3d 1252 (10th Cir. 2015), a deputy shot and killed an individual when

---

[1] Citations to paragraph numbers, without more, e.g. (¶ __), refer to paragraphs in the Amended Complaint (ECF No. 29).
[2] The Response expends considerable effort taking out of context and relying on the officers' earlier statements that day. For Fourth Amendment purposes, though, the officers' subjective beliefs are irrelevant. *See Kentucky v. King*, 563 U.S. 452, 464 (2011) (calling a subjective standard "fundamentally inconsistent with [Supreme Court] Fourth Amendment jurisprudence"); *see also United States v. Martinez*, 643 F.3d 1292, 1296 (10th Cir. 2011) (applying an objective standard to the emergency aid exception).

2

the deputy appeared at a home to execute a year-old failure-to-appear warrant out of a drug court for the individual's father. *Id.* at 1256-57. The Tenth Circuit rejected the deputy's reliance on hot pursuit to justify his entry. *Id.* at 1257. The Court found the deputy's action may not have been objectively reasonable and the deputy possessed a "gross misunderstanding of the law" that "once a person has committed a felony, he is fair game for 'hot pursuit' whenever he is spotted." *Id.* Here, in contrast to *Attocknie*, pursuit occurred while officers and Mr. Burnett stood feet from a fresh crime scene outside the front door.

*United States v. Reeves*, 524 F.3d 1161 (10th Cir. 2008) is also dissimilar. There, the Tenth Circuit found the suspect's decision to open the door to his motel room was compelled because officers had spent the prior twenty minutes yelling and pounding on the door and window in the middle of the night. *Id.* at 1168-69. In contrast, no one was on Mr. Burnett's property when he decided to open the front door and engage officers. (ECF 33-1, 44:57-45:08) In the end, nothing in the Response casts doubt on the application of hot pursuit to the alleged facts. The officers could have arrest Mr. Burnett in his front yard. Mr. Burnett "may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *U.S. v. Santana*, 427 U.S. 38, 43 (1976). As such, the officers are entitled to qualified immunity on the unlawful entry claim.

## III. The Officers Did Not Violate Clearly Established Law in Their Application of Force

Mr. Burnett was far from subdued.[3] Instead, he was actively fleeing and forcefully resisting arrest before, during and after Officer Barth used her taser. That much cannot be reasonably challenged considering the BWC videos. Perhaps recognizing this, the Response elects to ignore

---

[3] The use of body weight was also appropriate under the circumstances. The BWC videos show officers removing their weight from Mr. Burnett once he stops struggling with officers. (33-4, 5:30-7:00)

3

the videos. The videos make clear that all three *Graham* factors tilt in the officers' favor. Officer Barth was not required to provide a warning prior to using her taser,[4] just as the officers were not required to announce that Mr. Burnett was under arrest prior to using force.

Additionally, the Response does not attempt to show that the use of the taser under the circumstances was clearly unlawful despite the assertion of qualified immunity. Plaintiff notes a district court case in the Response, *Asten v. City of Boulder*, 652 F. Supp. 2d 1188 (D. Colo. 2009). In addition to being factually dissimilar, *Asten* is incapable of making clearly established law. *See Lowe v. Raemisch*, 864 F.3d 1205, 1211 (10th Cir. 2017) ("[A] district court's holding is not controlling in any jurisdiction."). The other case cited, *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007), involved a misdemeanant and, again, very different circumstances than those here. *See McCoy v. Meyers*, 887 F.3d 1034, 1049 (10th Cir. 2018) (describing *Casey* as a case where a misdemeanant "was neither violent nor attempting to flee"). Accordingly, the Response fails to show that Officer Barth violated clearly established law.

**IV. The Officers Are Entitled to Qualified Immunity on The Claim for Inadequate Medical Care**

The Amended Complaint alleges that Mr. Burnett did not receive adequate medical attention as he laid handcuffed on the floor. (¶¶ 69-103) The allegations are blatantly contradicted by the BWC videos. The videos show that the officers were not deliberately indifferent to a serious medical condition.

To begin, as the Tenth Circuit held in *McCowan v. Morales*, 945 F.3d 1276, 1290 (10th Cir. 2019), the medical claim is properly analyzed under the Fourteenth Amendment. The

---

[4] A warning is only necessary when an officer encounters "a nonviolent misdemeanant who d[oes] not pose a threat and [is] not resisting or evading arrest . . . ." *Lee v. Tucker*, 904 F.3d 1145, 1150 n. 1 (10th Cir. 2018).

Response cites only one Tenth Circuit decision—*Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991) *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995)—to support Plaintiff's position that the claim should be analyzed under the Fourth Amendment. (ECF. No. 41, 9) Significantly, *Austin* did not involve a claim for inadequate medical care. Neither the Response nor a thorough review of Tenth Circuit decisions has uncovered an action where a claim for inadequate medical care was analyzed under the Fourth Amendment. On the other hand, the Fourteenth Amendment has been applied to similar circumstances as alleged here. *See Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009); *Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637 (10th Cir. 2017).

Shifting to the substance of the claim, to satisfy the objective component of deliberative indifference, a medical need must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The Amended Complaint does not allege that Mr. Burnett suffered from a specific known medical condition, let alone one that was easily recognizable. *See Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020) (finding the inquiry was whether "[Plaintiff's] condition of delirium tremens was so obvious that any Defendant should have recognized it and escalated the course of treatment accordingly."); *see also Quintana v. Santa Fe Cty. Bd. of Commissioners*, 973 F.3d 1022, 1032 (10th Cir. 2020) (dismissing complaint when it did not allege that the official "was presented with *recognizable* symptoms that might create a medical emergency.") (emphasis in *Quintana*); *Rife v. Jefferson*, 742 F. App'x 377, 384 (10th Cir. 2018) (unpublished) (noting the subtlety of heart attack symptoms). Mr. Burnett is not seen in the video seeking help or in clear need of medical attention. Instead, the

video shows Mr. Burnett acting combatively, stopping, and officers attempting to assess the ambiguity of his passivity.

The subjective component requires "actual knowledge: 'the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*'" *Quintana*, 973 F.3d at 1029 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis in *Quintana*); *see also Strain*, 977 F.3d at 992 ("[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it."). Further, "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Here, officers spent much of the time after Mr. Burnett stopped resisting attempting to assess his physical condition. They checked and found his pulse repeatedly (33-4, 8:47-9:00, 10:00-10:09, 10:20-10:32, 13:00-13:02); they placed Mr. Burnett on his side (*Id.*, 8:47-9:00, 10:09-10:26, 10:36-10:42); they looked for and found other signs of consciousness (*Id.*, 11:20-11:41, 12:49-12:53). Once they did not see his chest rise and fall, and observed a lack of pupil constriction, they began compressions. (*Id.*, 14:21-14:58) In sum, the officers did not act with deliberate indifference.

Finally, the officers did not violate the "rigorous standards for 'clearly established' law." *Quintana*, 973 F.3d at 1031. "[T]here is no duty to give, as well as summon, medical assistance, even if the police officers are trained in CPR." *Wilson v. Meeks*, 52 F.3d 1547, 1555 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001). The Response relies solely on *Est. of Booker v. Gomez*, 745 F.3d 405, 432 (10th Cir. 2014) to oppose the officers' assertion of qualified immunity. *Est. of Booker* is factually distinguishable, though. *See Crittenden v. City of Tahlequah*, 786 F. App'x 795, 804 (10th Cir. 2019) (unpublished) (rejecting the

application of *Est. of Booker* and noting that the duty to perform CPR after an officer-involved shooting is an open question in the Tenth Circuit). *Est. of Booker* involved a prisoner's medical episode brought about by an over two-minute carotid neck hold and eight-second taser cycle while the inmate laid in a prone position. *Id.* at 432. The officers, here, never used a carotid hold and there is no allegation of positional asphyxiation. Next, the causal chain between the taser deployment and concern over Mr. Burnett's inaction is broken by a significant time lapse and physically exertive resistance by Mr. Burnett. Indeed, even more time transpires before Mr. Burnett's pulse is lost. Additionally, rather than ignoring Mr. Burnett's condition, the officers actively verified the underlying circumstances of his health and repeatedly checked his pulse. Finally, unlike a jail setting, the officers did not have immediate access to professionally trained medical assistance. Given these significant differences, *Est. of Booker* does not provide fair notice to the officers and they did not violate clearly established law. Accordingly, they are entitled to qualified immunity.

**V. The ADA Claim is not Plausible**

Nothing required officers[5] to provide Mr. Burnett with an accommodation during the encounter. An accommodation is not required when an individual seeking an accommodation is "a direct threat to the health or safety of others." 28 C.F.R. § 36.208(a). The Response ignores this express exception within the ADA and argument in the motion to dismiss. The Amended Complaint alleges that Mr. Burnett committed felony menacing. (¶¶ 18-20, 29, 30-31) The Response does not contend that Mr. Burnett acted lawfully when he physically resisted his arrest.

---

[5] As stated on page 13 of the motion to dismiss, the ADA applies to public entities, not public employees. *See* 42 U.S.C. § 12132; *see also Hick v. Keller*, No. 11-cv-0422-WJM-KMT, 2012 WL 1414935, at *6 (D. Colo. April 24, 2012).

7

Setting aside Mr. Burnett's criminal behavior, Sgt. Inazu only knew, at best, that Mr. Burnett suffered from a mental illness. He did not know Mr. Burnett's limitations. *See Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (the "ADA requires employers to reasonably accommodate limitations, not disabilities."); *see also J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015) ("According to J.H., Deputy Sharkey already knew that J.P. had a disability. This argument is unsupported and conflates a disability with a need for accommodation."). Unknown to him was the cause of Mr. Burnett's behavior—whether Mr. Burnett was under the influence of drugs and/or alcohol and the specific illness affecting Mr. Burnett. Sgt. Inazu was equally unaware whether the illness was substantially limiting and the required accommodation. *See Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193, 1197 (10th Cir. 2007) ("Once a public entity has knowledge of an individual's disability, the entity must also have knowledge that an individual requires an accommodation of some kind to participate in or receive the benefits of its services."). The Response argues that a response from a Crisis Intervention Team was warranted. Mr. Burnett certainly did not make such a request. *See id.* ("noting, in a Title II case that, the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request" unless the need for accommodation is obvious) (internal quotation marks omitted). This is not a case where a public entity failed to provide an alternative way of communicating to one known to be deaf or alternative mobility to a paraplegic. *See Richardson v. Butler*, No. 12-CV-02912-REB-CBS, 2014 WL 700177, at *13 (D. Colo. Feb. 20, 2014) ("The ADA is intended to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and able-bodied.") (internal quotation marks omitted); *see also J.H.*, 806 F.3d at 1261 ("For example, if a disabled individual uses a wheelchair, courts might require [under the ADA] law enforcement officers to secure the wheelchair when

making an arrest."). Rather, Mr. Burnett engaged in criminal behavior and continued to act unpredictably while officers were on scene. Officer allowed Mr. Burnett significant time to compose himself outside of their presence as they investigated his criminal conduct. Accordingly, the Amended Complaint does not allege a plausible claim under the ADA.

**VI. The Amended Complaint Fails to Allege a Claim Against the City**

The Response claims that post-incident IA findings reveal policies that permit "warrantless entries, excessive force, declining to request urgent medical care or attempt[ing] life-saving [care] . . . and [a] failure to accommodate." (ECF No. 41, 14) In support, it cites two conclusory paragraphs in the Amended Complaint. (*Id.*) In truth, the Amended Complaint does not identify a single CSPD policy by name or describe any policy in detail and show that the policy was the moving force behind the allegedly violative conduct. *See Erickson v. City of Lakewood*, 489 F. Supp. 3d 1192, 1206 (D. Colo. 2020) (Dismissing claim because "plaintiff has identified no systemic pattern of behavior that would indicate that the individual defendants were following an official departmental policy.").

The Response also argues that the post-incident internal affairs[6] ("IA") investigation caused the constitutional violation. This argument fails because "[t]he Tenth Circuit has rejected municipal liability . . . where the final policymaker's actions occurring *after* the incident are alleged to be the basis of ratification." *Colbruno v. Diggins*, No. 17-CV-01072-WYD-MJW, 2018 WL 10215848, at *10 (D. Colo. Jan. 31, 2018) (emphasis in original) citing *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009); *see also Trujillo v. Campbell*, No. 09-CV-03011-CMA-KLM, 2012 WL 3609747, at *8 (D. Colo. Aug. 22, 2012) ("the Court is unable to perceive how a

---

[6] The amended complaint alleges in conclusory terms that IA is a final policymaker. (¶ 120) "Conclusory allegations are not sufficient to state a constitutional violation." *Robertson*, 500 F.3d at 1193.

lackluster post-shooting investigation could have caused [the officer] to violate [the suspect's] Fourth Amendment rights."); *Erickson*, 489 F. Supp. 3d at 1207.

The Response claims the City has multiple training deficiencies. It does so without pointing to "a particular glaring omission in the training regimen . . . ." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). While the Amended Complaint baldly alleges training shortcomings, it does not describe the training officers received on the ADA, warrantless entry, force, or medical care. *See Rehberg v. City of Pueblo*, No. 10-CV-00261-LTB-KLM, 2012 WL 1326575, at *5 (D. Colo. Apr. 17, 2012) ("Mere conclusory allegations that an officer or group of officers are inadequately trained are not enough to plausibly state a failure to train or supervise claim."). Said differently, absent from the Amended Complaint "are any supporting factual allegations providing a basis for [P]laintiff['s] failure-to-train theory; [Plaintiff] do[es] not set forth any facts concerning how the individual defendants were trained, who they were trained by, or why their training was deficient." *Sanchez v. City of Littleton*, 19-CV-01871-PAB-MEH, 2020 WL 5815913, at *11 (D. Colo. Sept. 30, 2020). Finally, factual allegations which would support a finding that the City acted with deliberate indifference are also missing. In sum, the Amended Complaint falls well short of alleging a claim against the City.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Honorable Court enter an order dismissing the Amended Complaint with prejudice.

Respectfully submitted this <u>4th</u> day of <u>March</u>, 2022.

OFFICE OF THE CITY ATTORNEY
Wynetta P. Massey, City Attorney


*/s/ W. Erik Lamphere*
W. Erik Lamphere, Division Chief
30 S. Nevada Ave., Suite 501
Colorado Springs, Colorado 80903
Telephone: (719) 385-5909
Facsimile: (719) 385-5535
erik.lamphere@coloradosprings.gov


### CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 4th day of March, 2022, I electronically filed the foregoing **REPLY TO RESPONSE MOTION TO DISMISS OR, ALTERNATIVELY, PARTIAL EARLY MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following via email:

Felipe Bohnet-Gomez (fbg@rmlawyers.com)
Siddhartha H. Rathod (sr@rmlawyers.com)
Benjamin DeGolia (bd@rmlawyers.com)
Ciara M. Anderson (ca@rmlawyers.com)
Matthew J. Cron (mc@rmlawyers.com)
*Attorneys for Plaintiff*

*/s/ Donnielle Davis*
Donnielle Davis
Legal Secretary