**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-1708-WJM-MDB

ESTATE OF CHAD ALEXANDER BURNETT,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality;
SERGEANT MICHAEL INAZU, in his individual capacity;
OFFICER JOSEPH DAIGLE, in his individual capacity;
OFFICER MATTHEW FLEMING, in his individual capacity; and
OFFICER CAROLINE BARTH, in her individual capacity,

    Defendants.

---

**PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF LUCAS HENNING, MD**

---

Plaintiff, through its attorneys, respectfully moves this Court for an order excluding certain testimony of Lucas Henning, MD, the Defendants' proffered emergency medicine expert. In support thereof, Plaintiff states as follows:

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C. Colo. LCivR 7.1(a), undersigned counsel conferred with counsel for Defendants regarding the relief sought herein. Defendants oppose the motion.

**BACKGROUND**

Pursuant to the Court's Scheduling Order, Defendants disclosed four (4) retained experts on July 17, 2023. Among Defendants' retained experts is Lucas Henning, MD, an emergency

physician practicing in Colorado Springs. **Ex. 2-A,** *Hennings Report*.[1] Defendants asked Dr. Henning to answer twelve questions: (1) What was Mr. Burnett's true cause of death?; (2) What is the difference between cardiac and respiratory arrest?  What are the appropriate treatments?; (3) What role did Colorado Springs police officers play in Mr. Burnett's death? (4) What preexisting conditions did Mr. Burnett have that contributed to or caused his death?; (5) Should the police officers have known about the preexisting conditions?; (6) Did the police officers administer timely and appropriate medical care?; (7) Was Mr. Burnett strangled, asphyxiated, or in respiratory distress during his encounter with Colorado Springs police officers?; (8) What role did alcohol and drugs play in Mr. Burnett's death?; (9) Could Mr. Burnett have died from the same cause but with a different inciting event?; (10) What role did the TASER play in Mr. Burnett's death?; (11) Was there evidence that Mr. Burnett was violent and posed a possible immediate threat to others or to himself?; (12) What evidence of significant trauma did the autopsy and Coroner's report show? **Ex. 2-A,** at 3, 9-14.

Plaintiff seeks to exclude Dr. Hennings' opinions in response to questions 3-6, and 8-11. To begin with, there are no references to any professional standards, guidelines, protocols, peer-reviewed literature, or other sources to explain how Dr. Hennings reached his conclusions. Dr. Henning is not qualified to render several opinions in his report. Finally, some of Dr. Hennings' opinions are not relevant to the case and will not assist the trier of fact.

## LEGAL STANDARD

Fed. R. Evid. 702, amended in 2000 in response to the *Daubert* trilogy of cases, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786 (1993); *General*

---

[1] To avoid any confusion, Plaintiff refers to exhibit numbers as they were produced by Defendants.

*Electric Company v. Joiner,* 522 U.S. 136, 118 S. Ct. 512 (1997), and *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 167 (1999), imposes a "gatekeeping" function on the district court to determine the admissibility of expert opinions. Pursuant to Fed. R. Evid. 702, before expert testimony may be admitted it must satisfy the following criteria: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) The testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) The expert has reliably applied the principles and methods to the facts of the case.

The district court must also determine if the expert opinion testimony will assist the trier of fact. In essence, this is a basic relevancy issue. Certain testimony is inappropriate. For example, it is impermissible for an expert to "interfere[] with the function of the judge in instructing the jury on the law." *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993). "When an expert merely states an opinion on an ultimate issue without adequately exploring the criteria upon which the opinion is based, the jury is provided with no independent means by which it can reach its own conclusion or give proper weight to the expert testimony." *Id*. at 188-89.

Defendants, as the proponents of Hennings' testimony, bear the burden of proving its admissibility for each component of Rule 702. *Bourjaily v. U.S.*, 483 U.S. 171, 175 (1987); *U.S. v. Nacchio*, 555 F. 3d 1234, 1241 (10th Cir. 2009). "The trial court plays a gatekeeping' role, but it has discretion as to how to perform that role." *Davies v. City of Lakewood*, 2016 WL 614434, at *1 (D. Colo. Feb. 16, 2016) (Jackson, J.) (citing *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000)). Under Rule 702, the trial court "ensures that an

expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

## OPINIONS TO BE EXCLUDED

**OPINION 3 What role, if any, did Colorado Springs police officers play in Mr. Burnett's death?** *Mr. [Burnett's] unfortunate death was not the fault of Colorado Springs police officers. He did die during contact with them, but this does not mean that police officers caused his death. Mr. Burnett went into cardiac arrest from an abnormal heart rhythm. He was acutely psychotic and agitated long before the police officers arrived. He was found to have a heart that was diseased with abnormal enlargement and stiffness of the muscles of the heart which put him at significant risk of sudden cardiac death. This is regardless of police contact. He was at significant risk at any time, and numerous benign events could have resulted in sudden cardiac death. The evidence shows that the police did not strangulate or asphyxiate Mr. Burnett. The evidence also shows that he did not sustain significant trauma as a result of police contact. There is no evidence of severe brain bleeding, blood loss, significant traumatic injury to vital organs from initial police contact.*

Dr. Hennings' report, and his attached resume (**Ex. 2-C**), do not establish his qualifications to render opinions "with a reasonable degree of certainty" as to whether Mr. Burnett would have died "regardless of police contact," or that "he was at risk at any time, and numerous benign events could have resulted in sudden cardiac death." (**Ex. 2-A,** p. 11, opinion 3). As an emergency physician, Henning is not qualified to render opinions as to whether Mr. Burnett's mental health—i.e., Mr. Burnett's supposed "acutely psychotic and agitated" state—led to a fatal heart rhythm. Further, the proffered testimony is not the product of reliable principles or methods. How Mr. Burnett *could have* died is speculative and not based on any accepted or reliable methodology. Additionally, Dr. Henning is not qualified to render opinions as to whether Mr. Burnett was "acutely psychotic and agitated," or whether that contributed to his death. Finally, whether Mr. Burnett's death was caused by the Colorado Springs police officers is the ultimate issue that the jury must decide.

4

**OPINION 4** **What preexisting conditions did Mr. Burnett have that contributed to or caused his death?** *Mr. Burnett was also previously diagnosed with bipolar disorder. He was clearly manic, agitated, and combative prior to any police interaction. His bipolar with acute psychosis already resulted in a very agitated state, and most likely caused his heart to race rapidly. This combined with the myocardial fibrosis and cardiac hypertrophy was a dangerous combination, leading to a fatal heart rhythm.*

Opinion 4 is speculative is not based on reliable methods or data nor evidence in the record. Dr. Henning is not qualified to render opinions on whether Mr. Burnett's mental health contributed to his ultimate death, nor does he reliably support such opinions. "Without stating the facts upon which his subjective conclusions are based, [Hennings'] report contains nothing more than *ipse dixit*, making it nearly impossible for the trial court to evaluate his opinion pursuant to Fed.R.Evid. 702." *Henderson v. National R.R. Pass. Corp.* 412 Fed. App'x. 74, 80 (10th Cir. 2011) (upholding district court's decision to grant motion to strike expert report on the basis that it contained conclusions unaccompanied by factual predicates). There is no reliable data or other basis for Dr. Hennings' opinion that Mr. Burnett's bipolar disorder and purported acute psychosis "most likely caused his heart to race rapidly." **Ex. 2-A,** at 12.

**OPINION 5: Should the police officers have known about the preexisting conditions?** *The answer to this question is no. There was nothing in Mr. Burnett's prior medical records that indicated his heart disease. This could not have been known by his outward appearance or behavior. There is no way that police officers could have known that he had an enlarged and stiff heart.*

In addition to being outside the scope of Henning's expertise, testimony about what the defendant officers should or should not have known is not relevant and is confusing to the jury. *See* Fed. R. Evid. 403. Defendants attempt to confuse the issue of whether Mr. Burnett was unconscious and not breathing, and therefore required medical attention, with whether he had an enlarged heart and therefore needed medical attention. Opinion 5 is also not based on reliable data and methodology. **Ex. 2-A,** at 12.

5

**OPINION 8: What role did alcohol and drugs play in Mr. Burnett's death?** *Mr. Burnett had evidence of alcohol and marijuana in his system. These alone could elevate his heart rate and cause agitation resulting in sudden death. While unlikely that they alone would have caused his death, they have a very high likelihood of being contributing factors to the overall state that led to sudden cardiac death.*

Dr. Henning is not a toxicologist or forensic pathologist and is therefore not qualified to render an opinion on whether alcohol or marijuana played a role in Mr. Burnett's death. *Ralston v. Smith,* 275 F.3d 965, 970 (10th Cir. 2001) ("Merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue."). Even if an expert is deemed qualified on a certain subject matter, he is still prohibited from expressing opinions based on speculation, subjective belief, or facts not supported by, or inconsistent with, the evidence. *See Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 781 (10th Cir. 1999) (finding a party must show that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements"); *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (affirming district court's decision to exclude expert testimony because he failed to show his testimony reliably applied the facts of the case). Hennings' opinion that alcohol and marijuana "could" have caused Mr. Burnett's death is speculative, unhelpful to the jury, and should be excluded. **Ex. 2-A,** at 13.

**OPINION 9: Could Mr. Burnett have died from the same cause but with a different inciting event?** *Yes, in fact, the list of potential events that could lead to abnormal cardiac rhythm and sudden cardiac death in Mr. Burnett are quite literally endless. Anything that could elevate his heart rate could have resulted in deterioration with his preexisting heart condition. Examples include but are not limited to running, engaging in sports, having an argument with somebody, having a psychotic event, drugs or alcohol, high elevation, and infections or other illnesses. Mr. Burnett was an avid cyclist and reportedly loved hockey. Engaging in the very activities that he loved could have caused him to develop a fatal heart dysrhythmia as well.*

Opinion 9—that there is a "literally endless" amount of potential causes of Mr. Burnett's death—is not based on sufficient facts or data and does not utilize any specialized or scientific

6

knowledge to help with the trier of fact or determine any issue. The opinion is also not the product of reliable principles and methods, as it is purely speculative. Under Rule 702, expert testimony comprises particularized knowledge - "[t]he word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Additionally, Dr. Hennings has not applied any principles or methods to the facts of this case in rendering this opinion. Finally, the probative value, if any, of the opinion is outweighed by confusing the issues and misleading the jury.

**OPINION 10:** **What role did the TASER play in Mr. Burnett's death?** *There is no evidence that the TASER played a role in Mr. Burnett's death. Notably, there was a significant time lapse between the time he was tased and when he went into cardiac arrest. There is also evidence showing that the TASER was not fully effective. It is extremely unlikely that the TASER contributed to the sudden cardiac death. This is also supported by the coroner's report.*

Opinion 10 is not supported by the evidence or data, and Henning is not qualified to render an expert opinion of this nature. The coroner's report explicitly attributes the taser as playing a role in Mr. Burnett's death, stating, "sudden death associated with . . . taser deployment." Moreover, Dr. Hennings' opinion that the Taser could not have caused Mr. Burnett's death is contradicted by this prior opinion that there is a "literally endless" list of potential causes. Ultimately, Dr. Hennings' report is devoid of any evidence or methodology that he used as the basis for his opinion, or how any methodology was applied. The defendant must "show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell*, 165 F.3d at 781.

**OPINION 11:** **Was there evidence that Mr. Burnett was violent and posed a possible immediate threat to others or to himself?** *Yes, the evidence is overwhelming that Mr. Burnett was acutely violent and threatening. He posed an immediate and significant risk to other people and to himself. He was physically and verbally aggressive. He damaged a neighbor's property.*

7

*He had multiple weapons on hand.  He was threatening to kill multiple people. He had a history of violent behavior. Neighbors expressed concern for their lives.*

Opinion 11 falls outside the scope of Dr. Hennings' expertise and is not a proper expert opinion. Whether Mr. Burnett was a threat to himself or others should be determined by a jury. *Simon v. Simon,* 924 P.2d 1255, 1259 (Kan. 1996) (if normal experience and qualifications of jurors permit them to draw proper conclusions from the given facts and circumstances, expert conclusions are not necessary); *see also Daubert*. *See Daubert*, 509 U.S. at 590 (expert's testimony that is nothing more than an expert's "subjective belief" is inadmissible); Fed. R. Evid. 702(b), (d). These opinions are also inadmissible under Rules 402 and 403.

## **CONCLUSION**

Plaintiff respectfully requests an Order excluding Lucas Hennings' testimony as detailed herein.

DATED this 22nd day of December, 2023.

RESPECTFULLY SUBMITTED,

RATHOD | MOHAMEDBHAI LLC

*s/ Ciara M. Anderson*
Ciara M. Anderson
Felipe Bohnet-Gomez
Matthew Cron
2701 Lawrence Street, Suite 100
Denver, Colorado 80205
(303) 578-4400
ca@rmlawyers.com
fbg@rmlawyers.com
mc@rmlawyers.com

8