IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-1708-WJM-MDB

ESTATE OF CHAD ALEXANDER BURNETT,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, a municipality;
SERGEANT MICHAEL INAZU, in his individual capacity;
OFFICER JOSEPH DAIGLE, in his individual capacity;
OFFICER MATTHEW FLEMING, in his individual capacity; and
OFFICER CAROLINE BARTH, in her individual capacity,

    Defendants.

---

### PLAINTIFF'S RESPONSE TO DEFENDANTS' FED.R.EV. 702 MOTION TO EXCLUDE AND LIMIT THE TESTIMONY OF EXPERT STEVEN B. BIRD

---

Plaintiff's medical expert, Steven Bird, M.D., has extensive experience, education, and training in emergency medicine and has been qualified as an expert witness by federal and state courts for many years. *See* **Ex. 1,** *Bird Curriculum Vitae and Prior Testimony.* Based on the facts of this case, and extensive medical and scientific literature, Dr. Bird opines that Mr. Burnett died as a result of cardiac arrest induced by metabolic acidosis—a condition caused by the physical exertion of Mr. Burnett's encounter with the officers, coupled with Mr. Burnett's inability to properly ventilate as he was restrained in a prone position. ECF No. 79-1, *Bird Report*, at 6. Defendants do not challenge Dr. Bird's proffered testimony because he lacks expertise, credentials, or qualifications as a medical expert. Rather, Defendants argue that Dr. Bird's opinions are "speculative, and because of the lack of data, is not derived by scientific method." ECF No. 79, at

6. However, Dr. Bird's opinions are based on sufficient data and derived from nearly thirty years of experience and expertise as an emergency medical provider. To the extent that Defendants wish to question the facts and data underlying Dr. Bird's opinions, they may do so during cross-examination at trial.

## ARGUMENT

Admission of expert testimony under Rule 702 requires a two-step analysis. "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Miller v. Secura Supreme Insurance Co.*, No. 22-cv-00037, 2023 WL 4364157, *5 (D. Colo. July 26, 2023) (internal quotations omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert*." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). An opinion is reliable if the reasoning or methodology of the expert is valid and "can be applied to the facts in issue." *Id.* The "gatekeeping" role of the court in assessing the "reasoning and methodology underlying the expert's opinion ... is not a role that emphasizes exclusion of expert testimony." *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) ("As the Advisory Committee to the 2000 amendments to Rule 702 noted with apparent approval, '[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule'").

### I. Dr. Bird is Highly Qualified.

Dr. Bird received his Bachelor of Science in biology *cum laude* in 1991 from Yale University. He was awarded his Doctor of Medicine degree by Northwestern University in 1995. ECF No. 79-1, at 1. Following medical school, he received post-graduate surgical training through

2

a residency with the Naval Hospital San Diego and emergency medicine training through a residency at the University of Massachusetts Medical School. *Id.* He also completed a two-year fellowship in medical toxicology, a recognized medical subspecialty, at the University of Massachusetts medical school in 2004. Dr. Bird has climbed the ranks as a professor in the Department of Emergency Medicine at the University of Massachusetts medical school since 2002. He also currently works as an attending Emergency Physician at the University of Massachusetts Medical Center, Marlborough Hospital, and Clinton Hospital. He serves on numerous professional committees for emergency medicine and toxicology. *Id.* He has also received several awards throughout his professional career for his contributions to the field of medicine, both as a physician and as a professor. *Id.* at 2. Physicians trained in medical toxicology, such as Dr. Bird, provide professional services in a variety of clinical, industrial, educational, forensic, and public health settings. *Id.* at 1. In addition, Dr. Bird serves as a reviewer or editor for several scientific journals in the subject matter of his opinions. *Id.* at 2. Dr. Bird is highly qualified to render medical opinions in this matter.

## II.   Dr. Bird's Opinions are Reliable and Based on Proper Methodology.

This Court has broad discretion in determining whether expert testimony is sufficiently reliable and relevant to be admissible. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000). In reviewing whether an expert's testimony is reliable, the trial court must "assess the reasoning and methodology underlying the expert's opinion…" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (*quoting Daubert*, 509 U.S. at 592-93). "[A]n expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported

3

speculation.'" *Id*. at 1222. No single factor should be dispositive in weighing the reliability of an expert's opinions. *Lovato v. Burlington Northern & Santa Fe, Ry. Co.*, 2002 WL 1424599 at *4-5 (D. Colo. June 24, 2002). "The requirement of reliability is lower than the merits standard of correctness." *Id.*

"Typically, to determine the reliability of expert testimony, courts do not focus on the correctness of the opinion; rather, the proponent of the expert must prove that the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *McGraw v. Cobra Trucking, Inc.,* 569 F.Supp.3d 1089, 1097 (D. Colo. 2021) (internal citation omitted). Furthermore, "[r]egardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always the same: to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Hollander v. Sandoz Pharmaceuticals Corp.*, 289 F.3d 1193, 1206 (10th Cir. 2002) (citations omitted). As this Court has held, expert testimony can take the form of "specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case." *Cope v. Auto-Owners Insurance Co.*, No. 18-cv-0051-WJM-SKC, 2023 WL 8482587, *4 (D. Colo. Dec. 7, 2023) (citing *Kumho Tire Co. v. Carmichael*, 565 U.S. 137, 150 (1999)). Thus, as long as an expert stays within the reasonable confines of his subject area a lack of specialization does not affect the admissibility of the expert opinion, but only its weight. *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, No.

02CV0109TC, 2005 WL 6015496, *3 (D. Utah Aug. 29, 2005) (*citing Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.2001)).

The crux of Defendants' argument is that the absence of data demonstrating Mr. Burnett's blood potassium values, lactic acid levels, and blood gas analysis renders Dr. Bird's opinions unreliable. ECF No. 79, at 4-5. Defendants further argue that the medical studies Dr. Bird relies upon lack symmetry to the circumstances of this case. *Id.* at 5. However, "[t]he simple fact that experts do not have lab results supporting their theory is insufficient to render their testimony unreliable." *Pirolozzi v. Stanbro*, No. 07-cv-798, 2009 WL 1441070, *4 (N.D. Ohio May 20, 2009). In *Pirolozzi*, Defendants sought to strike two medical experts opining on a theory of asphyxia. *Id.* at *2-*4. The Court determined the experts' testimony was reliable, and therefore admissible. *Id.* at *4. In reaching this conclusion, the Court stated, that "it would be nearly impossible to simulate the extreme circumstances of police restraint in scientific experiments." *Id.* The Court also found that published, peer-reviewed medical journal materials involving lab studies met *Daubert's* reliability factors.

Here, Dr. Bird's proffered testimony is based on sufficient facts and data, and Defendants present no evidence or expert testimony demonstrating that Dr. Bird's methodology was not reliably applied to the facts of this case. Not only did Dr. Bird rely upon videos of the encounter, depositions, and Mr. Burnett's medical records, but he also relied upon nearly thirty years of experience in reaching his opinions. *Etherton v. Owners Ins. Co.*, 35 F. Supp. 3d 1360, 1371 (D. Colo. 2014); *see also Hall v. Flannery*, 840 F.3d 922, 928 (7th Cir. 2016) (finding that doctor's opinions were based on sufficiently reliable methodology based on his review of autopsy report, medical records, and deposition testimony). Dr. Bird also relied on peer-reviewed medical

5

literature in reaching his opinions. ECF No. 79-1, at 5-7. Based on these sources and methods, Dr. Bird provides a detailed explanation of how he arrived at his opinion.[1] Dr. Bird explains that during **_any_** strenuous activity or struggle, the sympathetic nervous system is activated, which causes epinephrine and norepinephrine to be released. *Id.* at 5 (emphasis added). Dr. Bird explained, "these chemicals cause the heart to beat harder and faster and to raise the blood pressure." *Id.* Dr. Bird explains that during this "period of peril, " people are more at risk of sudden death because of the increased release of epinephrine and norepinephrine. In explaining the basis of his opinion, Dr. Bird provides several examples from medical literature that reliably support his conclusions. *Id.* at 7.

Defendants fail to support their argument in support of the notion that Dr. Bird must have Mr. Burnett's baseline metabolic measurements. Applying insights and findings from laboratory and other controlled studies to the facts of a particular case to explain what occurred is at the core of medical and scientific expert testimony. And Defendants do not cite any case holding that the lack of an individual's baseline metabolic measurements renders medical opinions about them unreliable for *Daubert* purposes. Dr. Bird routinely treats patients in emergency circumstances where he must determine whether they have suffered from severe metabolic derangements without knowing the patient's baseline blood levels. Moreover, the absence of baseline data is not surprising. As one study found, "[a]utopsy examinations in arrest-related deaths may be

---

[1] Notably, unlike Dr. Bird, Defendants' experts Lucas Henning and Robert E. Kleinman do not rely on any medical studies or other methodology in reaching their opinions. Yet, Defendants argue that their experts' experience coupled with a review of records (which Dr. Bird also undertook) is sufficient to admit their experts' opinions. ECF No. 87, at 3-5; ECF No. 88, 2-3.

6

unrevealing. [Two researchers] stated that deaths in-custody often demonstrate little pathologic evidence of the cause of death and there are no diagnostic markers of asphyxia deaths."[2]

Defendants argue that the studies Dr. Bird relies upon "have questionable applicability to the underlying facts" because there is no evidence to suggest that Mr. Burnett sprinted the equivalent of 150 meters, and because it is "evident" that Mr. Burnett did not exert himself similarly to punching or kicking a heavy bag for 45 seconds. ECF No. 79, at 5. But there is ample record evidence supporting Dr. Bird's opinion that Mr. Burnett significantly exerted himself. ECF No. 79-1, at 3-4. Moreover, Defendants conspicuously fail to address the medical studies Dr. Bird cites that have direct relevance to the underlying facts of this case because they are specifically studies that examine PH, lactate, and catecholamine concentrations in volunteers in simulated use of force encounters or after they were subjected to a Taser. *Id.* at 6-7. The literature Dr. Bird relies upon were all published in peer-reviewed publications and are therefore reliable under *Daubert*.

### III. Defendants' Criticisms go to the Weight of Dr. Bird's Opinions, not to their Admissibility.

Defendants' criticisms regarding Dr. Bird's assumptions and opinions go to the weight that a jury should give Dr. Bird's opinions, not their admissibility. *See Hardy v. Union Pac. R. Co.*, No. 10-CV-01880-REB-MJW, 2011 WL 5295199, at *3 (D. Colo. Nov. 2, 2011) (finding that "[t]o the extent [the expert's] facts and data ... may be inaccurate, incomplete, or otherwise imperfect, those flaws go to the weight to be ascribed to his opinions, and not to their admissibility."); *Parker v. Wal-Mart Stores, Inc.*, 267 F.R.D. 373, 377 (D. Kan. 2010) ("questions concerning ... the factual basis and sources of an expert's opinion affect the weight to be assigned

---

[2] Weedn, et al., *Prone restraint cardiac arrest in in-custody and arrest-related deaths,* J Forensic Sci. 2022; 67: 1899–1914, https://doi.org/10.1111/1556-4029.15101.

to that opinion rather than its admissibility."). Defendants will have an opportunity to challenge Dr. Bird's opinions at trial through "[v]igorous cross-examination [and] presentation of contrary evidence." *Daubert*, 509 U.S. at 596 (1993).

## CONCLUSION

In short, Defendants' criticisms of Dr. Bird's opinions go to the weight, not admissibility, of his testimony. Defendants' Motion to Limit and Exclude the Testimony of Expert Dr. Steven Bird [ECF No. 79] should be denied.

Respectfully submitted,

RATHOD | MOHAMEDBHAI LLC

*s/ Ciara M. Anderson*
Ciara M. Anderson
Felipe Bohnet-Gomez
Matthew Cron
2701 Lawrence Street, Suite 100
Denver, Colorado 80205
(303) 578-4400
ca@rmlawyers.com
fbg@rmlawyers.com
mc@rmlawyers.com